IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| KIAWAH ISLAND UTILITY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:19-cv-1359-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| WESTPORT INSURANCE CORPORATION, | ) | |
| SWISS RE INTERNATIONAL SE, LLOYD'S | ) | |
| SYNDICATE 1882 CHB, and MEARS | ) | |
| GROUP INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on defendant Westport Insurance Corporation's ("Westport") motion to dismiss, ECF No. 23. For the reasons set forth below, the court denies the motion to dismiss.

## I. BACKGROUND

Westport provided property and business interruption insurance coverage to plaintiff Kiawah Island Utility, Inc. ("KIU") from September 1, 2015 to September 1, 2016. KIU entered into a contract ("the Contract") with defendant Mears Group Inc. ("Mears") to install an underground pipeline running from Kiawah Island to Johns Island ("the Project"). The Project consisted of using horizontal directional drilling to bore an underground hole and then pulling pipe through the hole. During this process, the pipe got stuck in the borehole, and Mears's work was lost. As a result, Mears had to drill a second borehole and install a new section of pipeline. Mears informed KIU that it incurred approximately $7 million to repair and/or replace the damaged pipeline and asked KIU to submit a claim for the loss to KIU's builder's risk insurer. KIU disagreed

1

that the Contract required KIU to provide builder's risk insurance for the Project but nevertheless submitted the claim to Westport. Westport denied coverage for the claim.[1]

On September 8, 2017, Mears filed suit against KIU seeking a declaration that KIU was responsible under the Contract for obtaining primary builder's risk insurance and alleging that KIU breached the Contract for failing to do so, causing Mears to suffer $7 million of damages ("the Mears action"). Mears subsequently filed a motion for summary judgment in the Mears action, and in response, KIU raised the argument that even if KIU did breach the Contract by failing to procure builder's risk insurance, Mears was not damaged by the breach because the damage to the pipeline was incurred by Mears's faulty workmanship, which is excluded from coverage under the Policy and under builder's risk insurance policies. The court granted summary judgment on the declaratory judgment cause of action in favor of Mears, holding that the Contract did require KIU to obtain primary builder's risk insurance. The court denied summary judgment as to the breach of contract cause of action, finding that there was a genuine issue of material fact as to whether Mears engaged in faulty workmanship and thus had been damaged by KIU's breach.

---

[1] The court notes that at the hearing, counsel for Westport sought to clarify the reason why Westport denied coverage. In an order in the Mears action, the court stated that Westport denied coverage because (1) Westport determined that the Westport Policy was excess to any of Mears's insurance policies, and (2) Mears engaged in faulty workmanship, which was excluded from coverage. In its motion to reconsider the court's order, KIU argued that this was a misstatement, but the court rejected the argument based on the arguments that were before it at that time. Westport now asks the court to clarify that Westport solely denied coverage based on faulty workmanship. Because consideration of the issue is not necessary to the court's resolution of the instant motion, the court declines to address the issue now. Counsel can raise the issue again when it becomes relevant to an issue before the court.

KIU then filed this declaratory judgment action on May 9, 2019 seeking, as to Westport, declarations that the Policy provides coverage for the pipeline damage, that the Policy must provide coverage up to the amount of available coverage, and that any of KIU's liability in the Mears action is covered by the "Insured's Liability" provision of the Policy ("the KIU action"). Westport filed its motion to dismiss on June 25, 2019. ECF No. 23. KIU responded on July 23, 2019, ECF No. 40, and Westport replied on August 6, 2019, ECF No. 52. The court held a hearing on the motion on September 12, 2019. The motion is now ripe for review.

## II.  STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir.1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. DISCUSSION

Westport bases its motion to dismiss on the doctrine of judicial estoppel. Westport argues that in the Mears action, KIU has maintained that Mears engaged in faulty workmanship, and that KIU cannot now switch positions and argue that it is entitled to coverage under the Westport policy because Mears did not engage in faulty workmanship. KIU first responds that Westport's assertions of judicial estoppel is inappropriate at the Rule 12(b)(6) stage of litigation and then argues that judicial estoppel does not apply here. The court addresses each in turn, finding that judicial estoppel generally may be applicable at this stage of litigation but ultimately concluding that it does not apply here. The court then briefly discusses another argument raised by Westport but declines to consider it for procedural reasons.

**A. Rule 12(b)(6) Standard**

Westport first argues that judicial estoppel is an affirmative defense and can serve as a basis for dismissal under Rule 12(b)(6). KIU disagrees, arguing that judicial estoppel is inappropriate at this early stage of litigation. The question of whether judicial estoppel can be applied when considering a motion to dismiss simply requires the court to refer back to the basic standard of Rule 12(b)(6), namely, that "courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents

4

attached or incorporated into the complaint.'" Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606 (4th Cir. 2015) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). In light of this standard of review, some courts have declined to apply judicial estoppel when considering a 12(b)(6) motion because the court needs more information than can be found in the complaint to determine whether judicial estoppel applies. See, e.g., Brown v. Lieutenant Governor's Office on Aging, 697 F. Supp. 2d 632, 639 (D.S.C. 2010) (finding the issue of judicial estoppel at 12(b)(6) stage of litigation to be inappropriate because it could not be resolved by consideration of the complaint alone). However, other courts have considered judicial estoppel in a 12(b)(6) motion to dismiss when the limited information before the court is sufficient to determine whether judicial estoppel should apply. See, e.g., Briggs v. Newberry Cty. Sch. Dist., 838 F. Supp. 232, 237 (D.S.C. 1992), aff'd, 989 F.2d 491 (4th Cir. 1993) (finding that, while not necessary for disposition of the motion to dismiss, judicial estoppel could be applied).

Here, Westport argues for judicial estoppel using the complaint in this action and various filings in the Mears action. The court can clearly consider the complaint, and Westport contends that the court can consider filings in the Mears action because they are public records. Indeed, at the 12(b)(6) stage, "a court may consider official public records" such as court records. Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396 (4th Cir. 2006). At the hearing on the motion, KIU agreed that the court can consider the filings in the Mears action in making its determination at this stage of litigation. As such, because the court only needs to consider the complaint and court records from the Mears

action to determine whether judicial estoppel applies, the court can conduct a judicial estoppel analysis even at this early stage of litigation.

**B. Judicial Estoppel**

Westport next argues that KIU should be judicially estopped from arguing that Mears did not engage in faulty workmanship because in the Mears action, KIU argued that Mears did engage in faulty workmanship. In response, KIU contends that judicial estoppel is not warranted here because it has merely asserted as Westport's coverage denial based on faulty workmanship as a legal defense in the Mears action, meaning that it is Westport and not KIU's position that Mears engaged in faulty workmanship.

"Judicial estoppel, an equitable doctrine that prevents a party who has successfully taken a position in one proceeding from taking the opposite position in a subsequent proceeding, is recognized to protect the integrity of the judicial system." King v. Herbert J. Thomas Mem'l Hosp., 159 F.3d 192, 196 (4th Cir. 1998). "[T]he doctrine is invoked to prevent a party from 'playing fast and loose with the courts,' from 'blowing hot and cold as the occasion demands,' or from attempting 'to mislead the [courts] to gain unfair advantage.'" Id. (quoting Lowery v. Stovall, 92 F.3d 219, 223, 225 (4th Cir. 1996)). However, "courts must apply the doctrine with caution." John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 29 (4th Cir. 1995). "[I]t has long been the law of this circuit that a court must consider each case's 'specific facts and circumstances' before holding a claim barred by judicial estoppel." Martineau v. Wier, 934 F.3d 385, 394 (4th Cir. 2019). In order for judicial estoppel to apply,

> (1) the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation; (2) the position sought to be estopped must be one of fact rather than law or legal theory; (3) the prior inconsistent position must have been accepted by the court; and (4)

> the party sought to be estopped must have intentionally misled the court to gain unfair advantage.

Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assur. Co., Inc., 867 F.3d 449, 458 (4th Cir. 2017), cert. denied sub nom. Applied Underwriters Captive Risk Assur. Co. v. Minnieland Private Day Sch., Inc., 138 S. Ct. 926 (2018). The Fourth Circuit has "characterized the final element as 'determinative.'" Id. The court addresses each element in turn, finding that while KIU has taken inconsistent factual positions, judicial estoppel does not apply because the court has not accepted KIU's position in the Mears action.

### a. Inconsistent Positions

Westport first argues that KIU is adopting a position in the KIU action that is inconsistent with the position it adopted in the Mears action. Specifically, Westport contends that KIU is now arguing that Mears did not engage in faulty workmanship in order to obtain coverage from Westport when KIU previously argued in the Mears action that Mears did engage in faulty workmanship. In response, KIU argues that it has not taken inconsistent positions because Westport was the party responsible for denying coverage based on faulty workmanship, not KIU. KIU claims that its argument about Mears's faulty workmanship was based on Westport's denial of coverage due to faulty workmanship. KIU maintains that in the Mears action, it "has cited as a legal defense to Mears' allegations of breach of [the Contract] that Westport (not [KIU]) denied coverage . . . based on a faulty workmanship exclusion." ECF No. 40 at 18. To be sure, it was Westport who determined that there was no coverage because Mears engaged in faulty workmanship. And both Mears and KIU both initially challenged that determination,

7

with KIU submitting an expert report to Westport that stated that "Mears acted in a prudent manner consistent with the industry standard of care." Compl. ¶ 42.

However, the issue is that KIU took the position that Mears engaged in faulty workmanship on as its own instead of couching its arguments in terms of abiding by Westport's coverage determination. For example, in its opposition to Mears's motion for summary judgment, KIU argued that even if KIU had to obtain builder's risk insurance, the damage would not have been covered by the insurance because "builder's risk insurance does not cover claims where the cause of the damage is faulty workmanship, which is the case here." Def. Opp. To Pl.'s Mot. Partial Summ. J., Mears action, 2:17-cv-02418 (D.S.C. Aug. 31, 2018), ECF No. 21 at 4. KIU did not qualify that assertion with an explanation that it is Westport's position that the cause of damage is faulty workmanship. Similarly, in providing a background of the dispute, KIU explained that "Mears applied excessive pull force on the PVC pipe and broke the pipe while pulling it through the borehole." Id. at 2. Again, this is an assertion by KIU that Mears engaged in faulty workmanship. KIU also claimed that "faulty workmanship caused Mears' alleged damage [and] [a]s a result, whether KIU obtained builder's risk insurance in inconsequential" and that "[b]ecause Mears' own negligence caused the damage it suffered, and because faulty workmanship is excluded from insurance coverage, it is inconsequential whether KIU obtained primary builder's risk coverage on the Project." Id. at 5, 11. These statements are not accompanied with clarification that it is Westport's position that Mears's own negligence caused the damage. As such, the court finds that these assertions belong to KIU.

Moreover, KIU hired its own expert to form an opinion on whether Mears's workmanship was faulty. The expert, Dr. Bennett, opined that "Mears made mistakes and failed to use good practices in some aspects of its operations on the Kiawah Island Utilities project which caused the failure of the nominal 16-inch diameter DR 14 FPVC pipe." Dr. Bennett Expert Report at 3, Mears action, 17-cv-2418, ECF No. 71-2 at 3. Dr. Bennett concluded that "Mears' mistakes were a breach of the ordinary standard of care in the industry." Id. KIU argues that there is a distinction between whether Mears engaged in faulty workmanship and whether Mears breached the industry standard of care; however, the court is unconvinced by this purported distinction. Both determinations go to the question of whether Mears properly completed its work on the Project. Moreover, KIU equates the issues of standard of care and workmanship in its complaint, stating that KIU "delivered to Westport an expert report from Mears stating Mears acted in a prudent manner consistent with the industry standard of care and, on that basis, asserted the faulty workmanship exclusion did not apply." Compl. ¶ 42 (emphasis added). Thus, KIU's own complaint contradicts its argument. In sum, the record in the Mears action indicates that KIU went beyond simply relying on Westport's determination and instead sought out an expert to opine that Mears did engage in faulty workmanship.

Now, in its complaint in the instant action, KIU alleges that "no exclusion bars coverage" under the Policy, Compl. ¶ 40, meaning that KIU alleges that the faulty workmanship exclusion does not apply. The clear implication of this allegation is that KIU now takes the position that Mears did not engage in faulty workmanship. KIU argues that because its allegation that "no exclusion bars coverage" is "[b]ased on the terms, conditions and definitions of the Westport Policy and information provided by

9

Mears", KIU's allegation that the faulty workmanship exclusion does not apply was based on information provided by Mears and Mears's arguments. Regardless, in seeking a declaration that the Westport Policy provides coverage, KIU will have to assert that the faulty workmanship exclusion does not apply, meaning that Mears did not engage in faulty workmanship.

Westport relies on two cases in support of its argument that KIU has taken inconsistent positions. First, in <u>Allen v. Zurich Ins. Co.</u>, a plaintiff sought to recover for injuries he sustained while working with the insured. 667 F.2d 1162, 1163–64 (4th Cir. 1982). The defendant's defense was that the plaintiff could not recover under the insured's policy because there was an exclusion for injuries sustained by the insured's employees. The Fourth Circuit held that the plaintiff was judicially estopped from claiming that he was not the insured's employee, which would make the insurance policy's exclusion inapplicable, when the plaintiff previously asserted in a state court case that he was the insured's employee. <u>Id.</u> at 1166–67.

In the second case, <u>Nat'l Union Fire Ins. Co. of Pittsburgh v. Manufacturers & Traders Tr. Co.</u>, a former employee of the plaintiff's insured perpetrated a fraudulent scheme in which the employee submitted fraudulent invoices and induced the insured to pay three entities. 137 F. App'x 529, 529 (4th Cir. 2005). The plaintiff insurance company was judicially estopped from asserting that these three entities were "fictitious entities" under section 3-404(b) of the Maryland Commercial Code because the insured "consistently alleged" that the entities were real entities in a state court action "after significant investigation and across multiple amendments to the complaints." <u>Id.</u> at 531.

Both of these cases provide examples of factually inconsistent positions that are akin to KIU's positions here.

KIU first tries to distinguish these cases by arguing that the finding of judicial estoppel was made either on a motion for summary judgment or after trial. As discussed above, the court has everything before it now to determine whether judicial estoppel applies, meaning that the court can make its finding now. KIU then tries to substantively distinguish the cases, but it does so in a rather conclusory manner by arguing that the cases contain clearly inconsistent positions while KIU's positions are not inconsistent. Based on the discussion above, the court finds that the positions are inconsistent.

### b. Fact vs. Law

Next, Westport argues that KIU's inconsistent position is based in fact, not law, because determining whether Mears engaged in faulty workmanship is a question of fact. Westport specifically points to the court's holding in the Mears action that there is a genuine issue of material fact as to whether Mears engaged in faulty workmanship. KIU disagrees, arguing that the issue of whether an insurance policy exclusion applies is a question of law.

Both parties are correct. Whether Mears engaged in faulty workmanship is a factual issue, and whether Westport properly denied coverage is a legal issue. The problem is how the parties are characterizing KIU's position for the purposes of judicial estoppel. Because Westport characterizes the difference in positions as relating to whether Mears engaged faulty workmanship, Westport argues that the issue is a factual one. Because KIU frames the issue as one as to whether Westport properly denied coverage based on the faulty workmanship exclusion, KIU contends that the issue is a

legal one. The court agrees with Mears's framing of the issue, as the question is whether Mears engaged in faulty workmanship. Therefore, KIU's inconsistent position is one based in fact.

### c. Accepted by Court

Westport next argues that this court accepted KIU's position that Mears engaged in faulty workmanship, meaning that KIU must be estopped now from asserting that Mears did not engage in faulty workmanship. "[J]udicial acceptance means only that the first court has adopted the position urged by the party[, either as a preliminary matter or] as part of a final disposition." Lowery, 92 F.3d at 224–25 (quoting Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 n.5 (6th Cir. 1982)). "[A]lthough the party against whom estoppel is being invoked need not have prevailed on the ultimate merits of its case, it must have convinced the judicial or quasi-judicial body to adopt its position." Scott v. Land Span Motor, Inc., 781 F. Supp. 1115, 1120 (D.S.C. 1991). "The insistence upon a court having accepted the party's prior inconsistent position ensures that judicial estoppel is applied in the narrowest of circumstances." Lowery, 92 F.3d at 224.

Westport argues that the court accepted KIU's position that Mears engaged in faulty workmanship by finding that there was a genuine issue of material fact as to whether Mears engaged in faulty workmanship. As Westport points out, the only reason why the court denied summary judgment to Mears's breach of contract claim was because the court found that there was a genuine issue of material fact as to whether Mears was damaged, which is dictated by whether Mears engaged in faulty workmanship.

The court finds that it has not accepted KIU's position in the sense that is required to apply judicial estoppel here. To be sure, the court gave credence to KIU's position in that the court acknowledged that KIU was arguing that Mears engaged in faulty workmanship, which created a genuine issue of material fact. However, the court did not accept the position because the court did not find that Mears did actually engage in faulty workmanship. To show that the court's "acceptance" of KIU's position for the purpose of finding a genuine issue of material fact is sufficient to invoke judicial estoppel, Westport points to the fact that "the party against whom estoppel is being invoked need not have prevailed on the ultimate merits of its case." Scott, 781 F. Supp. at 1120. However, in Scott, the court discussed adopting a position in terms of adopting the merits of the position, not just the fact that the party was arguing for the position. Moreover, the Scott court ultimately declined to invoke judicial estoppel because the prior proceeding was settled without any determination of the merits, meaning that the plaintiff's position was not "successfully maintained." Id. at 1120. This suggests that the court must adopt the merits of a position, not simply the fact that the position is being argued for.

In addition, the cases cited by Scott discuss judicial estoppel as being "designed to prevent a party from convincing unconscionably one judicial body to adopt factual contentions only to tell another judicial body that those contentions [are] false." Id. (emphasis added) (quoting M. Kramer Manufacturing Company v. Andrews, 783 F.2d 421, 448 n.23 (4th Cir. 1986)); see also id. ("It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter . . . assume a contrary position" (quoting Davis v. Wakelee, 156 U.S. 680, 689 (1895))). These cases suggest that in order for a

court to adopt a position, for the purposes of judicial estoppel, the court must have adopted the merits or facts of the position and not just the fact that the party was taking the position. Indeed, the court has been unable to find any instance in which a court applied judicial estoppel in part because it found that the party's position created a genuine issue of material fact without actually considering the merits of the position.

Westport also relies on language from <u>Scott</u> that explains the judicial estoppel "precludes a contradictory position without examining the truth of either statement." 781 F. Supp. at 1119 (quoting <u>Teledyne Indus., Inc. v. N.L.R.B.</u>, 911 F.2d 1214, 1218 (6th Cir.1990)). Westport argues that this language indicates that the court may still find that judicial estoppel applies even though it did not consider the truth of whether or not Mears engaged in faulty workmanship. However, a review of the case quoted by <u>Scott</u> for this proposition reveals that this language simply cautions against the use of judicial estoppel and explains how the requirement of judicial acceptance mitigates a negative aspect of judicial estoppel. In <u>Teledyne Indus., Inc.</u>, the Sixth Circuit explained that "[j]udicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." 911 F.2d at 1218. The court continued, stating that "[f]or example, before the doctrine of judicial estoppel may be invoked, the prior argument must have been accepted by the court" and "[a]lthough this limit allows parties to contradict themselves in court, it threatens only the integrity of the parties, not of the court." <u>Id.</u> As such, "[r]equiring prior judicial acceptance protects the truth-seeking function of the court, while preserving the court's integrity." <u>Id.</u>

In other words, when judicial estoppel is applied, a court does not have the opportunity to determine which inconsistent position is true. This means that a court may judicially estop a party from asserting a position that is true only because it has already accepted the first position. For this reason, a court's acceptance of a position is required to protect the court's truth-seeking function because once the court accepts one position, judicial estoppel prevents the court from later being faced with another position that casts doubt on the truth of the judicially accepted position. As applied here, judicial estoppel would apply to preclude KIU from asserting that Mears did not engage in faulty workmanship without the court examining the truth of whether or not Mears did in fact engage in faulty workmanship, which provides reason for judicial estoppel being applied with caution. But in doing so, the court still would need to accept KIU's first position, that Mears did engage in faulty workmanship, and the court finds that it has not done so.

Because the requirement of a court's acceptance of an inconsistent position "ensures that judicial estoppel is applied in the narrowest of circumstances," Lowery, 92 F.3d at 224, and because the court is unconvinced here that it has accepted KIU's position as contemplated by the doctrine of judicial estoppel, the court declines to apply judicial estoppel here.

### d. Intentionally Misleading

The final, and determinative, element of judicial estoppel is whether KIU intentionally misled the court to gain an unfair advantage. "Without bad faith, there can be no judicial estoppel." Zinkand v. Brown, 478 F.3d 634, 638 (4th Cir. 2007). Because the court finds that judicial estoppel does not apply based on the third element, the court need not consider this element.

### C. Insured's Liability Provision

In a footnote at the end of its motion to dismiss, Westport also argues that judicial estoppel applies to KIU's allegation that any liability of KIU in the Mears action is covered by the "Insured's Liability" provision of the Policy. In response, KIU contends that Westport fails to identify any legal argument as to why judicial estoppel would apply to this claim. Westport then argues in reply that the court should dismiss KIU's claim regarding the "Insured's Liability" provision as not being ripe for adjudication.

Because the court finds that judicial estoppel does not apply here, the court can easily dispose of the argument that judicial estoppel should also apply to KIU's claim about the "Insured's Liability" provision. As to whether the "Insured's Liability" claim is ripe for adjudication, Westport raised this argument for the first time in its reply brief. "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006). As such, the court declines to consider this argument.

## IV. CONCLUSION

For the foregoing reasons the court **DENIES** Westport's motion to dismiss.

**AND IT IS SO ORDERED.**

        **DAVID C. NORTON**
        **UNITED STATES DISTRICT JUDGE**

**October 22, 2019**
**Charleston, South Carolina**